UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES WESLEY PROCTOR,

      Plaintiff,

v.                                    Case No: 8:15-cv-1228-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## **ORDER**

    Plaintiff, James Wesley Proctor, seeks judicial review of the denial of his claim for disability insurance benefits and supplemental security income.  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    **Procedural Background**

    Plaintiff filed applications for disability insurance benefits and supplemental security income on June 2, 2011.  (Tr. 235–248.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 66–111.)  Plaintiff then requested an administrative hearing.  (Tr. 7.)  Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 45–65.)  After the hearing, Plaintiff underwent psychological consultative examinations.  (Tr. 486–494, 510–521.)  Thereafter, a supplemental hearing was held before the ALJ.  (Tr. 28–44.)

    Following the supplemental hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits.  (Tr. 8–27.)

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning on May 1, 2011. (Tr. 235, 242.) Plaintiff has a twelfth grade education. (Tr. 48, 280.) Plaintiff's past relevant work experience included work as a short order cook and kitchen helper. (Tr. 19.) Plaintiff alleged disability due to lumbar disc problems and pain, depression, and suicidal tendencies. (Tr. 280.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 1, 2011, the alleged onset date. (Tr. 13.) The ALJ determined that Plaintiff had the following severe impairments: depressive disorder, degenerative disc disease, panic disorder, post-traumatic stress disorder, pain disorder, cognitive disorder, and borderline intellectual functioning. (Tr. 13.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"), specifically Listings 1.04, 12.04, 12.05, or 12.06. (Tr. 14–15.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> [T]o perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: he can lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour day; and sit for 6 hours in an 8-hour day. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; however, he must avoid climbing ladders, ropes or scaffolds. He is able to perform simple, routine, repetitive tasks; and he can understand, remember and carry out simple instructions. He is able to adapt to infrequent changes in the work setting. He is limited to work that requires occasional interaction with coworkers. He is limited to work that requires occasional supervision.

(Tr. 15.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 18.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 19.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an electric equipment assembler, hand packer, shoe packer, and packing line worker.  (Tr. 20.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 20.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of a Listing; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) at step three of the sequential process, the ALJ erred in his findings as to whether Plaintiff's impairments met or equaled Listing 12.05C; (2) the ALJ failed to articulate good cause for discounting a treating physician's opinions; and (3) the ALJ's assessment of Plaintiff's RFC failed to incorporate the severity of limitations opined by consultative examining physicians regarding Plaintiff's ability to interact with co-workers and supervisors.  For the reasons that follow, these contentions do not warrant reversal.

### A.    Step Three of the Sequential Process

Plaintiff contends that the ALJ erred at step three of the sequential process in his finding that Plaintiff's impairments did not meet or equal Listing 12.05C.  (Dkt. 16 at 5–17.)  The ALJ concluded that Plaintiff had the following severe impairments: depressive disorder, degenerative disc disease, panic disorder, post-traumatic stress disorder, pain disorder, cognitive disorder, and borderline intellectual functioning.  (Tr. 13.)  However, the ALJ determined that, individually or in combination, Plaintiff's mental impairments did "not meet or medically equal the criteria" of Listing 12.05C because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (Tr. 14–15.)

Plaintiff concedes that his IQ score of 71 is too high to meet Listing 12.05C.  (Dkt. 16 at 7.)  However, Plaintiff contends that the ALJ erred by ending his analysis of whether Plaintiff met 12.05C "after the ALJ [found] that [Plaintiff's] IQ score does not 'meet' the listing" without making findings as to the other elements of Listing 12.05C.  (Dkt. 16 at 9.)  Specifically, Plaintiff contends that the ALJ erred by not making findings as to whether Plaintiff has "a physical or other mental impairment imposing an additional and significant work-related limitation of function" or deficits in adaptive functioning prior to reaching age twenty-two.  (Dkt. 16 at 8–9.)  Plaintiff contends that he met the physical or mental impairments prong because the ALJ found that Plaintiff has severe impairments and that the evidence shows Plaintiff's adaptive functioning deficits.  (Dkt. 16 at 8, 9–13.)

Plaintiff's "main assignment of error" (Dkt. 22 at 1), however, is that the ALJ erred by failing to consider whether his intellectual impairment is "medically equivalent" to Listing 12.05C.  (Dkt. 16 at 6; Dkt. 22 at 1–2.)  Plaintiff contends that the ALJ was required to consider whether Plaintiff's impairments medically *equaled* the severity of Listing 12.05C even though Plaintiff did not *meet* Listing 12.05C.  (Dkt. 22 at 1.)  Remand is appropriate, Plaintiff argues, for the ALJ to make findings as to whether Plaintiff met the other elements of Listing 12.05C and as to whether Plaintiff's impairments equaled Listing 12.05C.  (Dkt. 22 at 1–2.)

At the third step of the sequential process, the ALJ considers "the medical severity" of the claimant's impairments and the claimant is disabled if the ALJ finds the impairments meet or equal a Listing.  20 C.F.R. § 416.920(a)(4)(iii).  Thus, "[a] claimant may prove that he is disabled by either (1) *meet*ing the listings or (2) *equal*ing the listings."  *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis in original).  "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the

statutory standard" and a finding that a claimant meets or equals a Listing is a finding that the claimant is unable of "performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original).

To meet a Listing, the claimant must "(1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." *Wilkinson*, 847 F.2d at 662. Thus, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria" and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original).

To meet Listing 12.05C, a claimant's impairment must first satisfy "the diagnostic description in the introductory paragraph," to Listing 12.05, which requires that a claimant demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age twenty-two. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.05. In addition to meeting the diagnostic threshold, a claimant must show evidence of (1) a valid IQ score of 60 through 70 and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05C; *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910–911 (11th Cir. 2015). Therefore, Listing 12.05C requires that a "claimant meet[] the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning." *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014).

To equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that

the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Wilson*, 284 F.3d at 1224. The Social Security Administration's Program Operations Manual System ("POMS") describes the criteria for equaling Listing 12.05C:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

Soc. Sec. Admin., *Program Operations Manual System*, DI 24515.056 (2016).[1]

The burden is on the claimant to show that he meets or equals a Listing. *Wilkinson*, 847 F.2d at 662. To meet a Listing, the claimant must "present specific medical findings that meet the various tests listed under the description of the applicable impairment." *Id.* To equal a Listing, the claimant "must present evidence which describes how the impairment has such an equivalency." *Id.*

The reviewing Court must determine whether substantial evidence supports the ALJ's determination regarding whether a claimant meets or equals a Listing. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (discussing the ALJ's finding as to whether claimant met a Listing and holding that "[t]he proper standard in reviewing the Secretary's findings of fact is whether there is substantial evidence to support those findings and inferences"); *See Dunlop v. Comm'r of Soc. Sec.*, 518 F. App'x 691, 693 (11th Cir. 2013) (affirming the ALJ's decision

---

[1] The POMS is available at https://secure.ssa.gov/poms.nsf/lnx/0424515056.

because "[r]egardless of the evidence that might suggest that [claimant's] impairments were more severe than the ALJ concluded, the record as a whole contains sufficient evidence for a reasonable person to accept the ALJ's conclusion that [claimant's] impairments did not meet, medically equal, or functionally equal a listed impairment"); *McMillian, on Behalf of A.T.F. v. Comm'r of Soc. Sec.*, 521 F. App'x 801, 803 (11th Cir. 2013) ("Substantial evidence supported the ALJ's determination that [claimant's] impairments did not medically equal a Listing"); *Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) (concluding that although "the ALJ did not explicitly discuss why [claimant] did not actually meet Listing 112.05—substantial record evidence supports that [claimant's] condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [claimant] was not disabled."). Thus, while the ALJ is required to consider whether the claimant's impairments meet or equal a Listing, the ALJ is not required to "mechanically recite the evidence leading to her determination" and even an implicit finding that a claimant does not meet a Listing is upheld if supported by substantial evidence. *Hutchison*, 787 F.2d at 1463.

In this case, the ALJ concluded that Plaintiff does "meet or medically equal the criteria of" Listing 12.05C "because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function (14F)." (Tr. 14–15.) The ALJ's finding that Plaintiff did not have a valid IQ score between 60 and 70 is supported by substantial evidence. Specifically, the ALJ cited to and accorded "great weight" (Tr. 15, 17) to a March 2013 psychological report prepared by consultative examining physician Dr. Cecilia Yocum based on Dr. Yocum's March 18, 2013 evaluation of Plaintiff. (Tr. 486–494.) During the evaluation, Dr. Yocum administered the Wechsler Adult Intelligence Scale-Fourth Edition and Plaintiff obtained a full scale IQ score

of 71, a verbal comprehension score of 74, a perceptual reasoning score of 75, a working memory score of 71, and a processing speed score of 65. (Tr. 488.) Dr. Yocum noted that these scores "indicate borderline intellectual functioning."[2] (Tr. 488.) Thus, the ALJ's finding as to Plaintiff's IQ score is supported by Dr. Yocum's report. Plaintiff must show that he meets "*all* of the specified medical criteria" of Listing 12.05C. *See Sullivan*, 493 U.S. at 530 (emphasis in original). Because Plaintiff could not meet the IQ requirement of Listing 12.05C, the ALJ's finding that Plaintiff does not meet Listing 12.05C was proper.

Plaintiff argues that, even though he could not meet Listing 12.05C because of his IQ score, the ALJ should have made findings as whether Plaintiff met the other elements of 12.05C and whether Plaintiff's impairments were the medical equivalent of Listing 12.05. (Dkt. 16 at 8–13.) However, the ALJ was not required to "mechanically recite the evidence leading to [his] determination" and the decision will be upheld if it is supported by substantial evidence. *Hutchison*, 787 F.2d at 1463. Upon review of the evidence, the Court finds that the ALJ's finding that Plaintiff did not meet or equal Listing 12.05 is supported by substantial evidence.

Specifically, the ALJ considered Plaintiff's testimony regarding his ability to work part time and his daily activities. Plaintiff testified that, at the time of Plaintiff's hearings before the ALJ, he was working as a cook and dishwasher three days a week. (Tr. 16, 18, 48–49.) The ALJ also considered Plaintiff's testimony that he is able to read "simple sentences" and add "on [his] fingers." (Tr. 18, 34.) As to his ability to do chores, Plaintiff testified that he vacuums, washes the dishes, and does laundry. (Tr. 55.) The ALJ considered this testimony and accordingly limited Plaintiff's RFC to "performing simple, routine, repetitive tasks," understanding, remembering, and

---

[2] It should be noted that Dr. Yocum's finding that Plaintiff's IQ score indicates "borderline intellectual functioning" further supports the ALJ's determination that Plaintiff did not meet Listing 12.05C because a diagnosis of " borderline intellectual functioning . . . is mutually exclusive of [intellectual disability]. *Jordan v. Comm'r of Soc. Sec. Admin.*, 470 F. App'x 766, 768 (11th Cir. 2012).

carrying out simple instructions, adapting to "infrequent changes in the work setting" interacting occasionally with co-workers, and being occasionally supervised.  (Tr. 18.)   The ALJ also considered the findings of the Disability Determination Service, in its denial of Plaintiff's claims initially and upon reconsideration, that Plaintiff had no severe mental impairments, but concluded that Plaintiff does have severe, but not totally disabling, mental impairments.  (Tr. 19, 70, 79, 93, 103.)

Next, the ALJ gave "great weight" to Dr. Yocum's opinions.  (Tr. 17.)  In the narrative portion of her report, Dr. Yocum found Plaintiff's speech to be "fairly clear, coherent, logical, and rational but a little stilted."  (Tr. 488.)  Dr. Yocum found that Plaintiff had limited concentration and trouble interpreting a "simple proverb," although Plaintiff had fair "[j]udgment into hypothetical social situations."  (Tr. 488.)  As far as Plaintiff's adaptive functioning, Dr. Yocum found that Plaintiff can tend to his self-care, tell time, do some household chores, including cleaning his room, doing dishes, using the microwave, and doing laundry, buy groceries and clothes, manage his money, drive a scooter, and talk on the phone.  (Tr. 488.)  Plaintiff did, however, report difficulty reading, "although he can read signs," and getting along with others.  (Tr. 488.)

In her medical source statement, Dr. Yocum found that Plaintiff had no difficulties understanding, remembering, or carrying out simple instructions or making simple work-related decisions, moderate difficulties with complex work-related decisions, and marked difficulties with understanding, remembering, or carrying out complex instructions.  (Tr. 491.)  As far as his ability to interact with others, Dr. Yocum found that Plaintiff has mild difficulties with interacting appropriately with the public, moderate difficulties responding appropriately to "usual work situations and to changes in a routine work setting," and marked difficulties with interacting

appropriately with supervisors and co-workers.  (Tr. 492.)  Dr. Yocum stated that these findings were based on Plaintiff's reports of his "difficulties getting along with coworkers and supervisors due to anger problems and poor work performance."  (Tr. 491.)

The ALJ afforded "significant weight" to a consultative psychological examination performed by Dr. Jeremy Zehr in July 2011.  (Tr. 16, 410–413.)  In his disability evaluation, Dr. Zehr noted that, at the time of the evaluation, Plaintiff worked twenty-five hours per week.  (Tr. 410.)  Dr. Zehr noted that Plaintiff worked full time for the majority of the past twenty-five years and that he began working part time due to back pain.  (Tr. 411.)  Plaintiff "reported good relationships with coworkers and supervisors," but reported receiving verbal reprimands from managers based on his work performance.  (Tr. 411.)  Dr. Zehr found that Plaintiff has a driver's license, drives a scooter, and is able to use public transportation independently.  (Tr. 411–412.)  Further, Dr. Zehr found Plaintiff to be "appropriately dressed and groomed, with good basic functioning and hygiene," "alert and well oriented," logical, coherent, and exhibiting appropriate affect.  (Tr. 412.)  Overall, Dr. Zehr diagnosed Plaintiff with depressive disorder, but found his prognosis to be "fair."  (Tr. 412–413.)

Finally, the ALJ considered a June 2013 psychological consultative examination performed by Dr. Gerald Hodan.  (Tr. 17–18, 510–521.)  Plaintiff reported that his daily activities included watching television, "trying to get some exercise" by walking, shopping at Walmart, making small meals, and working.  (Tr. 512.)  Plaintiff reported working four days a week for about five to six hours a day.  (Tr. 512.)  Dr. Hodan found that Plaintiff's ability to independently set realistic goals and make plans was "unlimited or very good," but that Plaintiff is unable to "meet competitive standards" as far as understanding, remembering, and carrying out "detailed" instructions.  (Tr. 520.)  Further, he found Plaintiff's adherence to basic cleanliness and neatness

standards "unlimited or very good," and his ability to interact with the general public "limited but satisfactory." (Tr. 520.) Dr. Hodan found that Plaintiff would need to be absent from work for about four days per month. (Tr. 521.) The ALJ found that Plaintiff's ability to work on a part-time basis "contradicts" Dr. Hodan's opinions, although the ALJ did incorporate some of Dr. Hodan's opinions as to Plaintiff's limitations in the ALJ's analysis of whether Plaintiff met different subsections of Listing 12.05. (Tr. 14–15, 18.)

The Court finds that the ALJ's decision that Plaintiff does not meet or equal Listing 12.05C is supported by substantial evidence. As set forth above, Plaintiff testified that he works part time as a cook and dishwasher, which he has done for twenty-five years, and can attend to his daily needs. The ALJ's reliance on evidence of Plaintiff's daily activities and ability to work was proper and the evidence supports the ALJ's conclusions. *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459–60 (11th Cir. 2015) (determining that the ALJ's conclusion that claimant did not meet the adaptive functioning deficit requirement of Listing 12.05 was supported by substantial evidence because claimant worked, at least part time, for many years, drove, and tended to his home, personal care, and children independently); *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009) (finding that substantial evidence supported the ALJ's determination that claimant did not meet Listing 12.05 because he did well in his special education classes, held jobs, and could tend to his personal care and money management). The ALJ's decision is further buttressed by the opinions of Dr. Yocum and Dr. Zehr. Accordingly, Plaintiff's contention does not warrant reversal.

## B.   Weight Accorded to Treating Physician's Opinions

Next, Plaintiff argues that the ALJ erred by failing to articulate good cause for discounting the opinions of Plaintiff's treating physician, Dr. Manjul Derasari. (Dkt. 16 at 19–23.)

Specifically, Plaintiff contends that if the ALJ had afforded Dr. Derasari's opinion that Plaintiff was not capable of performing full-time work, then Plaintiff would be entitled to benefits.  (Dkt. 16 at 19–20.)

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment.  20 C.F.R. § 404.1527(a)(2).  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.  *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240–1241 (11th Cir. 2004).  Ultimately, the ALJ

may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In assessing Plaintiff's RFC, the ALJ examined Dr. Derasari's treatment notes and opinions set forth in Dr. Derasari's physical RFC questionnaire.  (Tr. 16–17.)   In his physical RFC questionnaire, Dr. Derasari opined that Plaintiff's back pain frequently interferes with Plaintiff's attention and concentration.  (Tr. 482.)  He opined that Plaintiff is able to walk one to two blocks without rest or severe pain, sit for two and a half hours and stand for two hours and forty-five minutes before switching positions, and sit and "stand/walk" for two hours out of an eight hour workday.  (Tr. 482–483.)  Further, he found that Plaintiff would need to take one, one-hour unscheduled break per work day and would be absent from work about two days per month.  (Tr. 483, 484.)  Plaintiff could occasionally lift and carry twenty pounds, but never fifty pounds.  (Tr. 483.)  The ALJ did not accord Dr. Derasari's opinions significant weight because they were not "supported by the record as a whole" and were inconsistent with Dr. Derasari's treatment notes and Plaintiff's testimony that he is able to work eight-hour days on a part-time basis.  (Tr. 17.)

The Court finds that the ALJ articulated good cause for discounting Dr. Derasari's opinions because they were inconsistent with Dr. Derasari's own treatment notes and were not bolstered by the evidence.  Upon review of the evidence, the ALJ's determination is supported by substantial evidence.  Although Dr. Derasari's treatment notes show that he treated Plaintiff's back pain, they reveal that Dr. Derasari found Plaintiff's pain to be managed with medication, which enabled Plaintiff to work, and could be improved with diet and exercise.  Specifically, in January 2010 treatment notes, Dr. Derasari stated that "[f]rom the pain perspective, [Plaintiff] is doing good" and stated that he would refill Plaintiff's pain medications.  (Tr. 395.)  In April 2010 treatment notes, Dr. Derasari stated that Plaintiff "continues to work and this [pain] medication is allowing

him to remain functional." (Tr. 394.) He noted that Plaintiff had been in an accident while on his motor bike since his last visit and that his main injury was to his right shoulder. (Tr. 394.) At the time of his accident, an x-ray was performed, which had normal results. (Tr. 394.) In July 2010 treatment notes, Dr. Derasari stated that Plaintiff's use of a back brace "seems to be working and helping him during his work." (Tr. 393.)

In October 2010 treatment notes, Dr. Derasari stated that he intended to continue Plaintiff's pain medication regime because "the medicine is allowing him to remain functional and gainfully employed." (Tr. 392.) Dr. Derasari noted, in January 2011 treatment notes, that he was refilling Plaintiff's prescriptions because of pain due to standing in one position for long hours. (Tr. 391.) In April 2011 treatment notes, Dr. Derasari stated that he recommended Plaintiff continue to do stretching to relieve Plaintiff's pain and maintain his fitness. (Tr. 390.) Dr. Derasari noted that Plaintiff reported that he "is not able to fulfill the long hours and the physical demand of his work," and therefore was considering "cutting down the work and applying for the social security disability." (Tr. 390.) In July 2011 treatment notes, Dr. Derasari noted that he advised Plaintiff to lose weight because that could help his back pain. (Tr. 428.) Plaintiff reported, at an August 2011 examination, that his pain worsened and Dr. Derasari recommended that Plaintiff "should start developing core body strength" to help his back pain. (Tr. 427.) In October 2011 treatment notes, Dr. Derasari noted that Plaintiff was walking for exercise, but Dr. Derasari recommended that he lose weight and continue exercising to remain strong. (Tr. 426.) In July 2012 treatment notes, Dr. Derasari noted that Plaintiff's medications were working well and that Plaintiff was working part time. (Tr. 464.) Thus, Dr. Derasari's own treatment notes undermine the extent of limitations he found in his physical RFC evaluation because his treatment notes demonstrate that Plaintiff's back pain was managed with medications, which enabled him to work.

Additionally, the ALJ's decision to discount Dr. Derasari's opinions is supported by other record evidence.  Specifically, the ALJ noted that Plaintiff testified that, at the time of his hearings, Plaintiff was working eight-hour days, albeit on a part-time basis.  (Tr. 18, 31, 49.)  Further, treatment notes from Plaintiff's visits to the emergency room in November 2012 and June 2013 show that Plaintiff's back was "normal" and "nontender" and Plaintiff had a normal range of motion, strength, and no tenderness or swelling.  (Tr. 450, 525.)  Finally, the ALJ considered the opinions of Dr. Eniola Owi, a consultative examining physician.  (Tr. 16–17.)  Dr. Owi examined Plaintiff in August 2011 and noted that Plaintiff reported that he works for three days a week and exercises by walking and doing push-ups.  (Tr. 414.)  Dr. Owi noted that Plaintiff's gait was normal and that he did not require an assistive device and that Plaintiff was able to "do tandem gait, one-legged stance without difficulty" and that his "heel and toe gait" was normal, although a "little unsteady."  (Tr. 416.)  Although Plaintiff reported tenderness and palpitation in the lumbar spine, Dr. Owi found no spasm.  (Tr. 417.)

Therefore, the ALJ adequately articulated good cause for discounting Dr. Derasari's opinions because the ALJ explained that Dr. Derasari's opinions were contradicted by Dr. Derasari's treatment notes and other record evidence showing that Plaintiff's limitations were not as limiting as opined by Dr. Derasari.  The ALJ's reasons are supported by substantial evidence and, therefore, Plaintiff's contention does not warrant reversal.

## C.    The ALJ's Assessment of Plaintiff's RFC

Finally, Plaintiff contends that, in his assessment of Plaintiff's RFC, the ALJ failed to account for limitations opined by consulting physicians regarding Plaintiff's ability to interact with co-workers and supervisors.  (Dkt. 16 at 23–25.)  The ALJ found that Plaintiff retained the RFC to do work that requires occasional interaction with co-workers and supervision.  (Tr. 15.)  Plaintiff

argues, however, that Dr. Yocum found that Plaintiff had "marked" impairments in interacting with supervisors and co-workers and that Dr. Hodan found that Plaintiff was "unable to meet competitive standards" with respect to interacting with co-workers and supervisors.  (Dkt. 16 at 23–24.)  Further, Plaintiff cites the VE's testimony that if the hypothetical claimant were limited to "less than occasional interaction" with co-workers and supervisors, he would be unable to perform the jobs listed by the VE.  (Tr. 43.)

In Dr. Yocum's medical source statement, Dr. Yocum opined that Plaintiff has "marked" restrictions in interacting appropriately with supervisors and co-workers.  (Tr. 492.)  Dr. Yocum was required to specify the "factors (e.g., the particular medical signs, laboratory findings, or other factors described above)" supporting her assessment.  (Tr. 492.)  Dr. Yocum stated that Plaintiff "reported he had difficulty getting along with coworkers and supervisors due to anger problems and poor work performance."  (Tr. 492.)  In the background portion of her medical source statement, Dr. Yocum stated that Plaintiff reported that he "encountered problems with co-workers and 'people in general,'" had problems with management because "they are not satisfied with how he works," and has been "written up" for anger problems, but not fired.  (Tr. 487.)  Further, in her findings as to Plaintiff's adaptive functioning, Dr. Yocum noted that Plaintiff "reported problems getting along with other people and has a very low tolerance for dealing with stress with others." (Tr. 488.)

In Dr. Hodan's psychological evaluation, Dr. Hodan stated that Plaintiff reported that he had "problems with his managers," has been written up, and experienced anger when his managers "tell him he is not working fast enough" or "is not doing something right."  (Tr. 512.)  Further, Plaintiff reported to Dr. Hodan that "when he is experiencing a high level of pain . . . he knows he can be impatient, easily irritated, overreact to stressors with anger, and is intolerant of crowds and

noise causing him to be quite socially withdrawn and isolated." (Tr. 513.) After a one-hour examination, Dr. Hodan completed a mental RFC questionnaire in which he opined that Plaintiff would be "unable to meet competitive standards" with regard to "sustain[ing] an ordinary routine without special supervision" and "work[ing] in coordination with or proximity to others without being unduly distracted." (Tr. 519.) The RFC questionnaire defined "unable to meet competitive standards" as meaning that "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 519.) However, Dr. Hodan found that Plaintiff's ability to "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes" and "interact appropriately with the general public" was "limited but satisfactory." (Tr. 519, 520.) Further, Dr. Hodan found that Plaintiff was "seriously limited, but not precluded," meaning that his abilities were "seriously limited and less than satisfactory, but not precluded in all circumstances" with regard to "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," "respond[ing] appropriately to changes in a routine work setting," and "deal[ing] with normal work stress." (Tr. 519.)

First, it must be noted that Dr. Yocum and Dr. Hodan are both consultative examiners and, as such, their opinions are not entitled to the deference normally given treating sources because they are not treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–161 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Dr. Yocum and Dr. Hogan are not Plaintiff's treating physicians, rather they examined Plaintiff to provide opinions as to Plaintiff's social security applications. Thus, these opinions were not entitled to be accorded significant weight by the ALJ.

Although Plaintiff concedes that the ALJ is not required to "credit every aspect of a medical opinion" the ALJ finds entitled to great weight, Plaintiff argues that the ALJ erred by not explaining why he did not incorporate Dr. Yocum's and Dr. Hodan's findings as to Plaintiff's ability to interact with co-workers and supervisors in his RFC assessment. (Tr. 25.) Plaintiff's contention is belied by the ALJ's decision, which shows that the ALJ considered both opinions and incorporated them into his assessment of Plaintiff's RFC. (Tr. 17–18.)

Specifically, as to Dr. Yocum's opinions, the ALJ noted that Dr. Yocum found that Plaintiff mainly had mild or no limitations, and had "marked limitations only in interacting with supervisors and co-workers." (Tr. 17.) The ALJ stated that Plaintiff's "limitations have been accommodated in the residual capacity determination herein." (Tr. 17.) To the extent the ALJ did not state explicitly why he found Plaintiff capable of occasional interaction with co-workers and supervisors, which is less limited than Dr. Yocum's finding of a "marked" limitation, this finding is proper because Dr. Yocum's opinions were based upon Plaintiff's subjective reports. As discussed above, Dr. Yocum stated that her opinions as to Plaintiff's ability to interact with co-workers and supervisors were based solely on Plaintiff's reports that "he had difficulty getting along with coworkers and supervisors due to anger problems and poor work performance." (Tr. 492.)

An ALJ may discredit a treating physician's opinion that is inconsistent with the medical evidence and is based on the claimant's subjective complaints. *Hoffman v. Astrue*, 259 F. App'x 213, 218 (11th Cir. 2007) (finding the ALJ's discrediting medical opinions proper because the opinions were based on Plaintiff's subjective complaints as to her mental impairments and were inconsistent with the record); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming an ALJ's giving less weight to a treating physician's opinions where the opinions were "based on [claimant's] subjective complaints" of symptoms of mental and psychological impairments); *Soroka v. Astrue*, No. 8:08-CV-1423-T-TBM, 2009 WL 2424563, at *5 (M.D. Fla. Aug. 5, 2009) (affirming the ALJ's discrediting a physician's opinions in part because the opinions relied "'quite heavily'" on the subjective complaints of the Plaintiff").  Therefore, because Dr. Yocum's opinions regarding the extent of Plaintiff's limitations in interacting with co-workers and supervisors were based solely on Plaintiff's subjective reports, the ALJ's decision to not incorporate the severity of Dr. Yocum's opined limitations was supported by substantial evidence.

As to Dr. Hodan's opinions, the ALJ incorporated some of Dr. Hogan's opinions into his decision, but found that Dr. Hodan's opinions that Plaintiff "could not sustain an ordinary routine without special supervision" or "work in coordination with or proximity to others without being unduly distracted," were inconsistent with Plaintiff's "continued ability to work three days a week, 8 hours a day." (Tr. 18.)  Thus, contrary to Plaintiff's contention, the ALJ explained that his reason for not incorporating Dr. Hodan's opinions regarding Plaintiff's ability to interact with co-workers and supervisors was they were contradicted by Plaintiff's ability to maintain part-time employment.  The ALJ's finding is buttressed by Plaintiff's testimony that he was working part time (Tr. 31, 48–49) and his work history report, which shows that he has been employed at the same restaurant since 1986 or 1987 (Tr. 260, 272), demonstrating that, despite Plaintiff's reports

of difficulties, he has been able to maintain employment with the same employer for three decades. The ALJ's finding is further supported by Dr. Zehr's findings that Plaintiff "reported good relationship with coworkers and supervisors," although he had some difficulties with managers based on them giving him reprimands because of his work performance. (Tr. 411.)  Therefore, the ALJ's finding that Plaintiff is capable of occasional interaction with co-workers and supervisors, despite the opinions of Dr. Yocum and Dr. Hodan finding more pronounced limitations, was supported by substantial evidence.   Accordingly, Plaintiff's final contention for reversal is unwarranted.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on August 25, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record